# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, a voluntary association, and RODOLFO ROSAS, Sr., | ) ) ) ) ) ) |
| Plaintiffs, | ) |
| vs. | ) ) |
| THORNE ASSOCIATES, INC., | ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiffs CHICAGO REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, a voluntary association, and RODOLFO ROSAS Sr. complain of Defendant THORNE ASSOCIATES, INC., an Illinois corporation, as follows:

## NATURE OF THE CASE

1. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiffs' claims arose out of acts and transactions that occurred in this district and because Defendant's principal office is located in this judicial district.

2. This case has three counts. Counts I and II are brought by Plaintiff CHICAGO REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA (hereinafter referred to as "CARPENTERS UNION") for declaratory and equitable relief and pursuant to the Declaratory Judgment Act of 1934, 28 U.S.C. Section 2201 *et seq.*, and the Americans with Disabilities Act, 42

1

U.S.C. Section 12101 *et seq.,* as amended by the ADA Amendment Act of 2008, Public Law 110 – 325 ("ADA").

3. Plaintiff CARPENTERS UNION, for and on behalf of its members, seeks (i) a declaratory judgment that the pre-employment fitness-for-hire test and pre-employment physical/medical examination (collectively, "pre-employment examinations") administered by THORNE ASSOCIATES, INC. ("THORNE ASSOCIATES") violate the ADA; and (ii) an injunction prohibiting THORNE ASSOCIATES from continuing to administer the pre-employment examinations and/or any examination that unlawfully requires applicants or employees to disclose medical information and/or submit to an examination for purposes inconsistent with those permitted by the ADA.

4. Count III is brought by Plaintiff RODOLFO ROSAS and arises from THORNE ASSOCIATES' violation of the ADA.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Sec. 1331 because Plaintiffs' claims involve federal questions arising under the Americans with Disabilities Act, 42 U.S.C. Sec. 12101, *et seq.*, and pursuant to 28 U.S.C. Sec. 1343(a)(4), as an action to secure equitable or other relief under a civil rights statute.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiffs' claims arose out of acts and transactions that occurred in this district and because Defendant's principal office is located in this judicial district.

7. All conditions precedent to suit have been met. Plaintiffs filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). This Complaint is filed within ninety days of Plaintiffs' receipt of their respective right to sue letters from the EEOC. A copy of the Notice of Right to Sue is attached hereto as Exhibit A and made a part of this Complaint.

## THE PARTIES

8. Plaintiff CARPENTERS UNION is a voluntary association which represents its membership of carpenter employees in the construction industry and with its principal address at 12 East Erie Street, Chicago, Illinois, 60601

9. At all times relevant, Plaintiff RODOLFO ROSAS was a member of Plaintiff CARPENTERS UNION and a resident of Bolingbrook, Illinois.

10. Defendant THORNE ASSOCIATES has continuously been a corporation organized under the laws of the State of Illinois with a principal place of business at 1450 West Randolph Street, Chicago, Illinois, 60607.

11. At all times relevant, Defendant has been a covered entity and employer within the meaning of the ADA, as amended.

12. The CARPENTERS UNION and THORNE ASSOCIATES have, at all material times, been parties to a collective bargaining agreement governing the terms and conditions of employment of employees in the bargaining-unit (i.e., carpenters).

## FACTUAL ALLEGATIONS

13. Since on or about July 2009, THORNE ASSOCIATES has required all applicants for bargaining-unit positions (i.e., carpenters) to undergo a physical/medical examination ("medical exam") and a fitness-for-hire test, (hereinafter "FFH test"); (collectively referred to as "pre-employment examinations").

3

14. Prior to June 2010, THORNE ASSOCIATES failed to notify the CARPENTERS UNION that FFH tests and medical examinations were being administered to applicants for bargaining-unit positions.

### **FFH Test**

15. At all times relevant, the FFH test administered to applicants for bargaining-unit positions consisted of a series of tasks allegedly designed to evaluate applicants' abilities to adequately perform the job duties of a carpenter.

16. The FFH test was designed to test an applicant's range of motion and muscle strength.

17. The FFH test required applicants to perform and pass eight lifting and carrying tests, including the following:

   i. Lift and carry a 50-pound box between 16 inches and 72 inches vertically, two times in five minutes and for a distance of five feet;

   ii. Lift and carry a 100-pound box to a height between 6 inches and 56 inches vertically, two times in five minutes and for a distance of five feet;

   iii. Climb a ladder twenty times in under five minutes; and

   iv. Lift and extend at chest height a 30-pound weight twenty times in five minutes

18. The FFH test purported to evaluate employment applicants' ability to perform the essential functions of the job.

19. The requirements of the FFH test do not test the ability to perform the essential functions of the job in question. The essential function of the job in question was to create a shaft wall around elevators at a jobsite.

20. Pursuant to creating a shaft wall, sheets of drywall needed to be transported.

21. The FFH test has a component for carrying and lifting various weighted objects, which THORNE ASSOCIATES claims is comparable to transporting drywall. "Failure" of this component of the test alone meant that an applicant failed the entire test, and was refused hire.

22. THORNE ASSOCIATES argues that drywall sheets must be carried by single individuals, and lifted into place by single individuals, so that it was an essential function of the job to carry and lift the equivalent weight of drywall sheets.

23. It is not an essential function of the job for individuals to carry and lift the equivalent weight of drywall sheets because the tests administered by THORNE ASSOCIATES in this regard are actually contrary to the safety practices the UNION requires for its members. For example, test component iv: "Lift and extend at chest height a 30-pound weight twenty times in five minutes," is a dangerous activity that could result in serious injury to the spine. By including this activity in the test, THORNE ASSOCIATES is instructing its employees that this is the method of transporting drywall that THORNE ASSOCIATES requires, so that the employees who are hired will be encouraged to engage in a dangerous activity, potentially causing serious injury.

24. Activities that the UNION discourages its members from undertaking cannot be essential functions of a UNION carpentry job.

25. Assuming *arguendo* that transporting drywall sheets is an essential function of the job, there are multiple methods of accommodating qualified individuals who cannot carry and lift the drywall weight claimed by THORNE ASSOCIATES. For

5

example two individuals could transport the drywall, instead of one. Scaffolds could be built to erect the elevator walls. Mechanical means to transport drywall, such as drywall carts, drywall lifts, and hand-trucks are routinely used in the field. These are all, in fact the usual methods used by UNION carpenters in the field, so that employing these methods cannot and do not create an undue hardship for THORNE ASSOCIATES. In fact, the use of mechanical means of transport actually saves the employer money because the carts are inexpensive and their use increases production.

26. THORNE ASSOCIATES' claim that it is an essential function of the job to carry and lift drywall in the manner tested is a pretext for disability discrimination. THORNE ASSOCIATES clearly must know that the method of transporting drywall the FFH tests for is not how the job is performed in the field, and in fact is a far less cost effective method than the methods actually used.

## **THORNE ASSOCIATES' Agent Concentra**

27. THORNE ASSOCIATES hired Concentra Medical Center to develop and administer the FFH test. A blank copy of the FFH test is attached hereto as Exhibit B.

28. Concentra Medical Center is a corporation headquartered in Texas that provides medical services to businesses.

29. Concentra is THORNE ASSOCIATES' agent.

30. THORNE ASSOCIATES required all carpenter applicants to take the same FFH test as described above and as attached hereto as Exhibit B.

31. At all times relevant, Steven Van Klompenburg was a physical therapist and the therapy director for Concentra Medical Center.

32. At all times relevant, Van Klompenburg was responsible for administering the FFH tests.

6

33. Van Klompenburg has extensive training and experience in physical and manual therapy, including a bachelor's degree in human biology, a master's degree in physical therapy, and a fellowship in manual therapy. Van Klompenburg is therefore a health care professional, as defined by the ADAAA.

34. In administering the FFH test, Van Klompenburg analyzed and evaluated each applicant's body mechanics. Van Klompenburg, a health care professional, therefore interpreted the test, as defined by the ADAAA.

35. Although titled a "Fitness for Hire" test, the FFH is in actuality a medical exam, asking "disability-related" inquiries, and is therefore prohibited in pre-employment applications.

36. The FFH is not narrowly tailored to test only the essential functions of the job, so that it discriminates against qualified individuals with disabilities who can perform the essential functions of the job, with or without accommodation.

### **Medical Exam**

37. In addition to the FFH tests, beginning on or about July 2009 through the present, THORNE ASSOCIATES has required all applicants for carpenter positions to undergo physical/medical examinations.

38. At all times relevant, the physical/medical examination administered by THORNE ASSOCIATES includes or requires a detailed medical history, vision test, blood pressure reading, pulse reading, visual field examination, and hearing test.

39. Applicants further receive heart monitoring, reflex testing, sensory examinations, and urinalysis.

40. At all times relevant, the physical/medical examinations required applicants to divulge¸ *inter alia*, their history of use of medications, both over the

counter and prescription; family history of heart disease and/or diabetes; prior incidences of hospitalization; and whether time off from work had been taken due to injury or illness.

41. The elements described above in paragraphs 36, 37, and 38 are "disability-related" questions which the ADAAA prohibits in pre-employment screening.

42. Between on or about June 2009 and June 2010, Concentra Medical Center has performed physical/ medical examinations on at least 83 applicants for bargaining-unit positions and members of the CARPENTERS UNION.

### Rudolfo Rosa's Employment Application

43. On June 24, 2010, ROSAS applied for a bargaining-unit position on THORNE ASSOCIATES' Lurie Children's Hospital jobsite.

44. At all times relevant, carpenters on the Lurie Children's Hospital were responsible for installing drywall core board within the Hospital's elevator shafts.

45. As of June 2010, ROSAS had approximately 29 years of experience working as a journeyman carpenter. This experience included extensive handling and installation of drywall.

46. In addition to his general carpentry experience, ROSAS worked directly for THORNE ASSOCIATES between 1995 and 2008 as a journeyman carpenter.

47. ROSAS' job duties for THORNE ASSOCIATES between 1995 and 2008 included drywall installation.

48. Between 1995 and 2008, ROSAS' work experience with THORNE ASSOCIATES was marked without incidents of complaints or unsatisfactory performance evaluations.

49. On or about June 24, 2010, THORNE ASSOCIATES required ROSAS to take a physical/medical examination.

50. On or about June 24, 2010, THORNE ASSOCIATES required ROSAS to take the FFH test described in paragraphs 15- 36 above.

51. In administering the FFH test on ROSAS, Van Klompenburg evaluated ROSAS' physiological response to the various lifting and carrying requirements identified in Exhibit B.

52. Van Klompenburg determined that ROSAS allegedly used improper body mechanics when lifting the 50-pound and 100-pound boxes to the required heights.

53. Van Klompenburg determined that ROSAS had no difficulty performing all other portions of the FFH test aside from the two tasks referenced in Paragraph 52.

54. Van Klompenburg recommended to THORNE ASSOCIATES that ROSAS was unable to perform the essential functions of the job, based on his determination that ROSAS allegedly used improper body mechanics, as described in paragraph 52 above.

55. THORNE ASSOCIATES refused to hire ROSAS as a result of ROSAS' alleged failure to perform the two lifting tests referenced in Paragraph 52 in a manner that met Van Klompenburg's expectations.

56. THORNE ASSOCIATES therefore refused to hire ROSAS because THORNE regarded ROSAS as disabled.

57. In the alternative, ROSAS was a qualified individual with a disability against whom THORNE ASSOCIATES discriminated, both in refusing to hire him and in failing to engage in the interactive process required by the ADA to accommodate that disability.

**COUNT I**
**DISCRIMINATION BY THE ADMINISTRATION OF**
**PRE-EMPLOYMENT FITNESS-FOR-HIRE EXAMINATION**

58. Plaintiffs' repeat and reallege paragraphs 1 through 57 of this Complaint as if fully set forth herein in this Count I.

59. Section 12112 (a) of the ADA prohibits an employer from discriminating against a qualified individual with a disability on the basis of that disability.

60. Section 12112(b)(6) proscribes the use of qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or class of individuals with disabilities unless the standard, test, or other selection criteria is shown to be job-related for the position in question and is consistent with business necessity.

61. THORNE ASSOCIATES' implementation, use, and administration of the FFH test, as described above, violates the ADA insofar as it is designed and administered in a manner so as to tend to screen out individuals with disabilities, whether actual or perceived.

62. The refusal to hire ROSAS is premised on THORNE ASSOCIATES' custom and/or policy of denying employment to individuals who cannot perform all the duties of a general description of the essential functions of a carpenter's job, regardless of whether the specific job for which the prospective employee applied required performance of those functions, and regardless of whether that applicant could perform the duties required by the particular job for which he was hired.

63. The customs or policies pursuant to which THORNE ASSOCIATES took their illegal actions constitute a standard, criteria or method of administration which has denied some of the UNION"s members employment positions based on their

disabilities, or based on THORNE ASSOCIATE's perception that the members are disabled.

64. THORNE ASSOCIATE's conduct in this respect was knowing and intentional.

65. The UNION was harmed by THORNE ASSOCIATE's use of these tests, in that some of its members were illegally denied employment.

## COUNT II
## DISCRIMINATION IN THE ADMINISTRATION OF
## PRE-EMPLOYMENT PHYSICAL EXAMINATIONS

66. Plaintiffs' repeat and reallege paragraphs 1 through 65 of this Complaint as if fully set forth herein in this Count II.

67. Section 12112(d) prohibits an employer from conducting a medical examination on a job applicant and from making inquiries of a job applicant as to whether such applicant has a disability.

68. The physical/medical examination required by THORNE ASSOCIATES of all job applicants for bargaining-unit positions, as described above, violates Section 12112 of the ADA.

69. THORNE ASSOCIATE's conduct in this respect was knowing and intentional.

70. The UNION was harmed by THORNE ASSOCIATE's use of these tests, in that some of its members were illegally denied employment.

## COUNT III
## DISCRIMINATION AGAINST ROSAS UNDER SECTION 102 of
## Title I of the ADA, 42 U.S.C. § 12112

71. Plaintiffs' repeat and reallege paragraphs 1 through 70 of this Complaint as if fully set forth herein in this Count III.

72. Section 12112 (a) of the ADA prohibits an employer from discriminating against a qualified individual with a disability on the basis of that disability.

73. In addition, Section 12102 (2)(C) extends protection to individuals who are regarded as being disabled, whether or not an actual disability exists.

74. Plaintiff ROSAS is a qualified individual with a disability within the meaning of the ADA.

75. In the alternative, THORNE ASSOCIATES regarded ROSAS as disabled.

76. Despite ROSAS' actual and/or perceived disabilities, ROSAS was fully capable of meeting THORNE ASSOCIATES' legitimate employment expectations.

77. THORNE ASSOCIATES' refusal to hire or offer employment to ROSAS constituted an adverse employment action, which was not based on legitimate business reasons; rather, the decision to deny ROSAS an offer of employment was based on unlawful disability discrimination and/or based on a perception that Plaintiff was disabled.

78. THORNE ASSOCIATES' conduct in this respect was knowing and intentional.

79. ROSAS was harmed by THORNE ASSOCIATES' use of these tests, in that he was denied employment, thus suffering damages as a result of THORNE ASSOCIATES' violations of the ADAAA, including financial loss damages, emotional

distress damages, and other compensatory damages and emoluments of employment to which he would have been entitled had THORNE ASSOCIATES hired him.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs CARPENTERS UNION and RODOLPHO ROSAS SR. pray for relief under Counts I, II and III and pray that this Court enter judgment in Plaintiffs' favor and against Defendant THORNE ASSOCIATES, and also requests the following declaratory, equitable and monetary relief:

(a) Declare that Defendant THORNE ASSOCIATES' fitness-for-hire test, as described above, violates Title I of the ADA;

(b) Declare that Defendant THORNE ASSOCIATES' physical/medical examination, as described above, violates Title I of the ADA;

(c) Enjoin Defendant THORNE ASSOCIATES from administering any pre-employment examination which discriminates against any applicant for employment or employee on the basis of a disability or a perceived disability;

(d) Order Defendant THORNE ASSOCIATES to pay Plaintiff ROSAS lost wages, including back and front pay, as a result of Defendant's unlawful conduct;

(e) Order Defendant THORNE ASSOCIATES to pay Plaintiff ROSAS compensatory and liquidated damages as a result of Defendant's unlawful conduct;

(f) Order Defendant THORNE ASSOCIATES to pay Plaintiffs CARPENTERS UNION and ROSAS the costs and attorneys' fees associated with this lawsuit; and

(g) Order that such additional relief be awarded as the Court considers just and equitable.

Respectfully submitted,

/s/ Amy Elizabeth Paluch Epton
One of Plaintiffs' attorneys


Terrance B. McGann
Amy Elizabeth Paluch Epton
Whitfield, McGann & Ketterman
111 East Wacker Dr., Suite 2600
Chicago, Illinois 60601
(312) 251-9700 Fax (312) 251-9701