UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, a voluntary association, and RODOLFO ROSAS, Sr., <br><br> Plaintiffs, <br><br> v. <br><br> THORNE ASSOCIATES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 11 C 4782 <br><br> Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

Defendant Thorne Associates, Inc. ("Thorne") refused to employ Rodolfo Rosas, Sr. ("Rosas") as a drywall carpenter after Rosas failed a "fitness for hire" ("FFH") test that required him to lift 50- and 100-pound boxes to certain heights. (Compl. [1] ¶¶ 17, 52, 55.) Rosas and his union, the Chicago Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America ("Union"), seek redress under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Rosas and the Union claim that (1) Thorne used the FFH test and a pre-employment medical examination to screen out individuals with disabilities rather than for job-related reasons; (2) the pre-employment medical examination violated the ADA; and (3) Thorne discriminated against Rosas on the basis of disability. (Compl. ¶¶ 60-62, 67-68, 72, 77; Supplement in Opp. to Def.'s Mot. to Dismiss (hereinafter "Pls.' Supp.") [27] at 4.) Thorne moverd to dismiss the case pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) and 12(b)(6). (Mem. in Support of Thorne's Mot. to Dismiss (hereinafter "Def.'s Mem.") [15] at 1-2.)

This court holds that (1) Plaintiffs lack standing to challenge Thorne's medical examination; (2) the FFH test is not a medical examination as defined by the ADA; (3) Plaintiffs have adequately pleaded that the FFH test is not consistent with business necessity; and (4) Plaintiffs have pleaded

that Rosas is disabled within the meaning of the ADA. Thorne's 12(b)(6) motion to dismiss is granted as to Count II, but denied as to Counts I and III.

## PROCEDURAL HISTORY

The issue before the court is the sufficiency of Plaintiffs' complaint, but both parties have referred to information gathered in an arbitration proceeding between the Union and Thorne that took place on July 15, 2010. At the court's request, Defendant has furnished a copy of the arbitration transcript and the arbitrator's opinion. The issues before the arbitrator were (1) whether a Union grievance based on Thorne's refusal to hire Rosas was substantively arbitrable; (2) whether Thorne violated its collective bargaining agreement when it refused to hire Rosas; and (3) whether the medical examination and FFH test used by Thorne violated the ADA. (Rodolfo Rosas Grievance Opinion and Award (hereinafter "Arb. Award") at 1-2, 5, 9.) The arbitrator determined that the Union grievance was substantively arbitrable and that Thorne did not violate the collective bargaining agreement when it refused to hire Rosas. (Arb. Award at 1, 10.) He also concluded that the FFH test was within the "inherent management right" of Thorne and does not violate the law.[1] (Arb. Award at 9 n.11, 10.) At this stage, the court considers information in the arbitration record only to the extent that, in their complaint and memoranda, Plaintiffs rely on the evidence presented there or otherwise demonstrate that they accept that evidence as true.

## FACTUAL BACKGROUND

Thorne is a construction company that performs interior work, including the installation of sheets of drywall that weigh more than 100 pounds. (Def.'s Mem. at 2.) Some time before July of 2009, Thorne contracted with Concentra Medical Center ("Concentra") to develop and administer a fitness-for-hire ("FFH") test, which it then required all carpenter applicants to take and pass.

---

[1] The arbitration transcript and arbitrator's opinion were not filed in the court's docket, but he court will direct the Clerk to place those documents in the record. Thorne does not argue that the arbitrator's determination binds this court.

(Compl. ¶¶ 17, 27, 30.) According to Defendant, the FFH test was designed to simulate work tasks required on Thorne carpentry jobs.[2] (Def.'s Mem. at 3.) The test was administered by a physical therapist and therapy director employed by Concerta, Steven Van Klompenburg (Compl. ¶¶ 31-32), to 83 potential employees, including Rosas, between July of 2009 and July of 2010. (Pls.' Supp. at 11.) All but two of the 83 applicants passed the FFH test and were hired by Thorne. (*Id.*)

In June of 2010, Rosas "had approximately 29 years of experience working as a journeyman carpenter," including work between 1995 and 2008 done "directly for Thorne . . . as a journeyman carpenter." (Compl. ¶ 48.) On June 24, 2010, Rosas applied to Thorne for a job installing drywall in the elevator shafts of Lurie Children's Hospital. (Compl. ¶ 43.) Thorne asked Rosas to take a medical examination[3] and FFH test administered by Concentra. (Def.'s Mem. at 3.)

Rosas passed the medical examination but failed the FFH test. (Def.'s Mem. at 3.) The FFH test required Rosas to, among other tasks, "lift and carry a 50-pound box between 16 inches and 72 inches vertically . . . [and] lift and carry a 100-pound box to a height between 6 inches and

---

[2] In its memorandum, Thorne describes its work as "specialty interior contractor work, including drywall, lath, plaster, acoustical, glass reinforced gypsum, rough and finish carpentry and demolition." (Def.'s Mem. at 2.) The company hires carpenters "who work with heavy building materials" and requires new carpenters to demonstrate "the ability to perform several skills that are essential job functions for the position" through the FFH test. (Def.'s Mem. at 2-3.)

Plaintiffs agree that the FFH test was designed to test an applicant's range of motion and muscle strength. (Compl. ¶ 16.) Plaintiffs nonetheless argue that the requirements of the test do not measure the ability to perform the essential functions of the job at issue for Plaintiff Rosas–creating a shaft wall around elevators–because requiring an individual to carry or lift the weights tested in the FFH test is contrary to union safety practices and "[a]ctivities that the UNION discourages its members from undertaking cannot be essential functions of a UNION carpenter job." (Compl. ¶¶ 19, 22-24.)

[3] According to Plaintiffs, the medical test included a detailed medical history, vision test, blood pressure reading, pulse reading, visual field examination, hearing test, heart monitoring, reflex testing, sensory examinations, urinalysis, history of medication use, family history of heart disease and diabetes, prior instances of hospitalization, and questions about whether time off work was taken due to injury or illness. (Compl. ¶¶ 38-40.)

56 inches vertically." (Compl. ¶ 17.) At the arbitration proceeding, Rosas testified that he was asked to "put the 100 pounds on top of one shelf, 6 feet." (Arb. Tr. 55:4-12.) Rosas, who is 5'3", recalled, "when I saw that, I told the guy, it's not going to happen; I am too short. . . . I lift the thing . . . and [Van Klompenburg] told me to put it down." (Arb. Tr. 55:13-15.) After that, Rosas testified, "[t]hen the guy brings the shelf all the way to 4 foot and a half. So he told me to lift it again. So I lifted 100 pounds and easy . . . [a]nd he told me, you're doing fine." (Arb. Tr. 55:15-19.) Van Klompenburg, who administered the test, determined that Rosas's "body mechanics were compromised" when lifting the 50-pound and 100-pound boxes. (Arb. Tr. 78:2-6; Compl. ¶ 51-52.) Rosas passed the other parts of the FFH test. He was able, for example, to "[c]limb a ladder twenty times in under five minutes," "[l]ift and extend at chest height a 30-pound weight twenty times in five minutes," and push a cart weighing 100 pounds 100 feet in five minutes. (Compl. ¶ 17, 53.) Because Rosas failed the FFH test, Thorne did not hire him for the Lurie Hospital job. (Compl. ¶¶ 54-55.) Plaintiffs argue that "[t]he only thing that changed" between Rosas's former satisfactory employment at Thorne and his application for the Lurie Hospital job was that Defendant "began requiring a test in which a man 5'3" tall is required to lift a 100 lb. weight over his head." (Pls.' Resp. To Def.'s Mot. to Dismiss (hereinafter "Pls.' Resp.") [18] at 10.)

## DISCUSSION

Under FRCP Rule 12(b)(6), a party may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint is read "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the non-movant's] favor." *EEOC v. United Airlines, Inc.*, ___ F.3d ___, 2012 WL 3871503, *2 (7th Cir. Sept. 7, 2012) (internal quotation marks and

citations omitted). The court evaluates Plaintiffs' claims under these standards, beginning with Plaintiffs' claim that Thorne administered illegal pre-employment medical examinations (Count II).

### A. Legality of FFH Test and Medical Exam

The ADA affords protection against certain medical examinations and inquiries made of any job applicant, regardless of disability. The Seventh Circuit summarized the ADA's requirements as "a prohibition against using pre-employment medical tests; a prohibition against the use of medical tests that lack job-relatedness and business necessity; and a prohibition against the use of tests which screen out (or tend to screen out) people with disabilities." *Karraker v. Rent-A-Ctr., Inc.*, 411 F.3d 831, 834 (7th Cir. 2005).[4]

#### 1. Illegal Pre-Employment Medical Exams

Prior to the extension of a job offer, which the ADA refers to as "preemployment," employers "shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A); 29 C.F.R. § 1630.13. An employer may, however, "make preemployment inquiries into the ability of an applicant to perform job-related functions." 42 U.S.C. § 12112(d)(2)(B). An employer may also ask an applicant to describe or to demonstrate how the applicant will perform job-related functions. 29 C.F.R. § 1630.14(a). After making a job offer, an employer "may require a medical examination . . . prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination" as long as all entering employees are subjected to the same examination regardless of disability. 42 U.S.C. § 12112(d)(3).

Plaintiffs label Thorne's FFH test and medical examination as "pre-employment

---

[4] The court notes that the ADA was significantly amended in the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"). Nothing in the ADAAA changes the prohibitions cited here.

examinations" (Compl. ¶ 3), and they argue that the tests were administered before Rosas received a "genuine conditional offer of employment."[5] (Pls.' Resp. at 7.) Thorne argues in response that Rosas received a conditional offer of employment before being tested by Concerta. (Def.'s Mem. at 3.) The court reads the facts in the light most favorable to Plaintiffs and assumes that the FFH test and medical examination took place pre-offer.

Rosas himself passed Thorne's medical examination, and the Union has not identified any other individual who was denied employment for failing the medical exam. As a result, Defendant argues, Plaintiffs lack standing to challenge the medical exam. (Def.'s Mem. at 10.) In support, Defendant cites *O'Neal v. City of Albany*, where the Seventh Circuit held that "courts have required that a nondisabled plaintiff [must] *at least* show some tangible injury-in-fact caused by the § 12112(d) violation." 293 F.3d 998, 1007-08 (7th Cir. 2002) (emphasis in original) (citations omitted). The court agrees that Rosas, who passed the medical exam, has no injury-in-fact related to it and no standing to challenge its legality. The court also agrees that the Union lacks standing. The Union claims that the medical examination unlawfully caused Thorne to deny "some of its members" employment in addition to barring Rosas (Compl. ¶¶ 63, 70), but the Union has not identified any such individuals with particularity. The court concludes Plaintiffs lack standing to challenge the medical examination and therefore need not determine whether that examination constitutes an illegal pre-offer medical examination under the ADA.

Plaintiffs also characterize the FFH test which Rosas failed as a medical examination; they note that it "was administered and interpreted by a medical professional, and was designed to reveal an impairment of physical health." (Pls.' Sur-Reply to Def.'s Reply to Def.'s Mot. to Dismiss [24] at 5.) The Equal Employment Opportunity Commission ("EEOC") defines a medical

---

[5] "A genuine conditional offer of employment is one in which 'the employer has evaluated all relevant non-medical information that it reasonably could have obtained and analyzed prior to giving the offer.'" (Pls.' Resp. at 7) (quoting *O'Neal v. City of Albany*, 293 F.3d 998, 1008 (7th Cir. 2002) (internal citation omitted)).

examination as "a procedure or test that seeks information about an individual's physical or mental impairments or health." EQUAL EMP'T OPPORTUNITY COMM'N, EEOC NOTICE 915.002, ENFORCEMENT GUIDANCE: PREEMPLOYMENT DISABILITY-RELATED QUESTIONS AND MEDICAL EXAMINATIONS (1995).[6] The EEOC lists several factors to determine whether a test is medical: (1) administration by a health care professional; (2) interpretation of results by a health care professional; (3) design to reveal a health impairment; (4) intention to help an employer determine an applicant's health impairments; (5) invasiveness; (6) measurement of physiological responses to performing a task rather than the performance itself; (7) location in a medical setting such as a health care professional's office; and (8) use of medical equipment during the test. EEOC NOTICE 915.002. The EEOC notes specifically that "[a] physical agility test, in which an applicant demonstrates the ability to perform actual or simulated job tasks" or "[a] physical fitness test, in which an applicant's performance of physical teats – such as running or lifting" is not a medical examination. EEOC NOTICE 915.002.

As an example of the difference between an impermissible medical test and a permissible performance test, the EEOC describes a requirement that applicants lift a 30-pound box and carry it 20 feet. If the only component of the test is to see whether the applicant can carry the box, it is "not a medical examination; it is just a test of whether the applicant can perform the task." If, however, the applicant's blood pressure or heart rate are tested after carrying the box, "the test would be a medical examination because it is measuring the applicant's physiological response . . . as opposed to the applicant's ability" to perform the task. EEOC NOTICE 915.002. In this case, Van Klompenburg critiqued Rosas's manner of lifting the 50-pound and 100-pound boxes during the FFH test, but evaluating an applicant's manner of lifting is better categorized as a performance measure than as a physiological response. Plaintiffs do not contest Defendant's

---

[6] The court notes that this document has not been updated since the ADAAA, but the ADAAA does not appear to alter any of the cited provisions.

7

assertion that the FFH test was designed for Thorne by Concerta to simulate the physical challenges of potential job tasks. The FFH test's requirements thus fall squarely into the categories of "physical agility" or "physical fitness" tests, which pose no problems under the ADA. The court concludes that Thorne did not subject Rosas or any other applicant to an illegal pre-employment medical examination by administering the FFH test.

### 2.     Non-Job-Related Exams

An employer may not use a qualification standard that screens out individuals with disabilities on the basis of disability unless the standard is job-related and consistent with business necessity. 42 U.S.C. § 12112(b)(6); 29 C.F.R. § 1630.10(a). Plaintiffs claim that the FFH test is not limited to essential job functions, and that it is meant to screen out individuals with disabilities rather than to identify job-related skills. (Compl. ¶¶ 19, 36.) Specifically, Plaintiffs dispute that carpenters need the ability to lift 50- and 100-pound weights to the heights required in the FFH test; according to Plaintiffs, "[i]t is not an essential function of the job to carry and lift the equivalent weight of drywall sheets." (Compl. ¶ 23.) Instead, Plaintiffs assert, alternative means of lifting—such as lifting in pairs or through the use of scaffolds and mechanical means—are "in fact the usual methods used by UNION carpenters in the field." (Compl. ¶ 25.) Notably, while Plaintiffs have alleged that carpenters "could" use alternative means of lifting, and have described the "usual" practices that Thorne "clearly must know" are used "in the field," Plaintiffs do not specifically allege that these practices are in fact utilized at Thorne job sites. (Compl. ¶¶ 25-26.) The court is nevertheless satisfied, for purposes of a Rule 12(b)(6) analysis, that Plaintiffs have adequately pleaded that lifting drywall without assistance is not an essential function of Thorne's carpentry jobs and that the FFH test was therefore not sufficiently job-related and consistent with business necessity for the Lurie Hospital job.

The true reason Thorne began administering the FFH test and medical examination,

according to Plaintiffs, was "to lower [Thorne's] workers' compensation costs." (Pls.' Supp. at 4.) A policy of not hiring applicants due to slightly increased risk of injury may either function as a pretext for outright discrimination, or, more subtly, have a tendency to screen out people who are disabled, violating 42 U.S.C. § 12112(b)(6). The statute, 42 U.S.C. § 12113(b), does, however, provide a defense to a charge of discriminatory qualification standards when "an individual . . . pose[s] a direct threat to the health or safety of other individuals in the workplace." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 76 (2002) extends this reasoning to situations in which the employer fears for the employee's own safety.

All of the evidence Plaintiffs cite in support of their suspicions about Thorne's motivation instead appears to reveal a purpose that is entirely consistent with this rationale. Plaintiffs offer the following quotes from the Arbitration Transcript:

> Physical Therapist Von Klompenburg: "**The purpose of the test was to determine whether or not he can safely perform the task in order not to cause possible harm to himself.**" Transcript "T" page 78.
> . . .
>
> Thorne President Dana Thorne: The test would be a good idea for Thorne because **"it would enhance our efforts to work in a safe manner to avoid injury to our employees."** T. p. 97.
>
> Thorne President Dana Thorne: "We need to demonstrate to our customers that we are capable of operating in a safe manner . . . that we have a good safety record and a good safety program." T. p. 97.
>
> Vice President Michael Degnan: A Carpenter who could not pass the test "doesn't meet our qualifications . . .for fitness. **And the possibility might be that you might hurt somebody or hurt himself. You don't want the employee to get hurt.**" T. p. 169.

(Pls.' Supp. at 4-5) (bold in original). In *Twombly*, the Court ruled that the plaintiff needed to present "allegations plausibly suggesting (not merely consistent with) agreement" to fix prices. 550 U.S. at 545. Unwilling to entertain "false inferences," the Court dismissed the plaintiffs' claims of collusion, finding them to be "consistent with conspiracy, but just as much in line with a wide

9

swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Id.* In this case, Defendant's statements regarding the importance of safety appear as likely to be motivated by § 12113(b) "direct threat" concerns as by workers' compensation calculations.

In inquiring into a job's essential functions, the court is not free to second-guess an employer's business judgment with regard to performance standards: an employer need only show that it actually imposes the disputed requirements on employees in practice. 29 C.F.R. Pt. 1630, App. Defendant argues that the FFH test was specifically designed to measure essential job functions, and that failing it indicates an inability to perform those essential functions. In a memorandum of law, Plaintiffs themselves assert that 81 of the 82 applicants other than Rosas who took the FFH test passed it. (Pls.' Supp. at 11.) This circumstance could undermine their assertion that the test does not correspond to actual Thorne carpentry duties. Moreover, a fair reading of the arbitration transcript supports the conclusion that Thorne did thoughtfully prepare the FFH test to identify essential job functions. Thorne may well be able to establish, either at the summary judgment or trial stage, that there are circumstances in which an employee does need the capacity to perform the tasks required in the FFH test. On a motion to dismiss, however, the court considers only those well-pleaded facts that appear in the Plaintiffs' complaint. At this stage, the court concludes that Plaintiffs have adequately pleaded that the FFH test was not job-related and was not consistent with business necessity: specifically, Plaintiffs have alleged that Rosas remained able to perform the same types of work he had performed for Thorne in the past, and that the FFH test requirements were not a realistic metric of the tasks actually performed by carpenters in the field.

### B. Discrimination Against Rosas on the Basis of Disability

To establish employment discrimination under the ADA, a plaintiff must show (1) that he

is disabled within the meaning of the ADA; (2) that he is qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and (3) that he suffered from an adverse employment action because of his disability. *Hoppe v. Lewis Univ.*, ___ F.3d ___, 2012 WL 3764717, *4 (7th Cir. Aug. 31, 2012) (citations omitted). Thorne contends that Rosas is not "a qualified individual with a disability" under the ADA's definition, and therefore cannot bring any claim under the ADA. (Thorne's Mot. to Dismiss (hereinafter "Def.'s Mot.") [14] ¶ 2.) The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[7] 42 U.S.C. § 12102(1). With regard to the definition's first prong, "actual" impairment, the ADA specifies that "major life activities include, but are not limited to . . . lifting . . . and working." 42 U.S.C. § 12102(2)(A). With regard to the third prong, "regarded as" impairment, the ADA states:

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.[8]

---

[7] Neither the ADA nor the ADAAA define "impairment." The EEOC regulations implementing the ADA adopt the definition of "physical or mental impairment" used in 34 C.F.R. § 104, which implements Section 504 of the Rehabilitation Act. 29 C.F.R. Pt. 1630, App. The Rehabilitation Act regulations define an impairment as "any physiological disorder or condition . . . affecting one or more of the . . . body systems . . . [including] musculoskeletal." 34 C.F.R. § 104.3(j)(2)(I). The EEOC regulations implementing the ADA note, however, that "'impairment' does not include physical characteristics such as . . . height, weight, or muscle tone that are within 'normal' range and are not the result of a physiological disorder." 29 C.F.R. Pt. 1630, App. In the EEOC regulations implementing the ADA, an impairment is a disability if "it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). An impairment need not prevent or even significantly restrict an individual from performing a major life activity in order to be considered substantially limiting, but "not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j)(1)(ii).

[8] The appendix to the implementing regulations ("Appendix") appears less than fully updated on this point. *Compare* 29 C.F.R. Pt. 1630 App. ("an individual who is regarded by an
(continued...)

42 U.S.C. § 12102(3)(A). The "regarded as" prong "does not apply to impairments that are "transitory and minor." 42 U.S.C. § 12102(3)(B).

Plaintiffs suggest that Rosas's failing the FFH test demonstrates that he is limited in the major life activities of lifting and working. Whether Rosas is disabled under the ADA's "actual" impairment prong depends on the meaning of the word "substantially." The ADAAA specifies that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). The associated regulations instruct courts to be generous in determining whether a plaintiff is substantially limited: "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(I). The regulations explain that the post-ADAAA definition of disability is broader than the one employed by courts pre-amendment.[9] 29 C.F.R. § 1630.2(j)(1)(iv).

Still, the category of disability is not unlimited. According to the post-ADAAA regulations, "[a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general

---

[8](...continued)
employer . . . as having an impairment *that substantially limits a major life activity* is an individual with a disability") (emphasis added), *with* 29 C.F.R. § 1630.2(j)(2) ("[w]hether an individual's impairment 'substantially limits' a major life activity is not relevant to coverage under . . . the "regarded as" prong"), *and* 29 C.F.R. § 1630.2(l)(1) ("[a]n individual is 'regarded as' having a disability if he is subjected to a prohibited action such as refusal to hire because of an actual or perceived impairment, 'whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity.'"), *and* 29 C.F.R. Pt. 1630 App. ("The concepts of 'major life activities' and 'substantial limitation' simply are not relevant in evaluating whether an individual is 'regarded as having such an impairment.'").

[9] With regard to lifting, pre-ADAAA case law almost certainly would preclude Rosas's claim. *See Steffen v. Donahoe*, 680 F.3d 738, 745 n.5 (7th Cir. 2012) (Seventh Circuit's pre-Amendment jurisprudence "clearly indicated that an inability to lift 25 pounds was not a substantial limitation" on a major life activity).

population." 29 C.F.R. § 1630.2(j)(1)(ii). Comparative assessment between an individual's performance and the performance of "most people in the general population . . . usually will not require scientific, medical, or statistical analysis." 29 C.F.R. § 1630.2(j)(1)(iv). Even without engaging in a statistical analysis, the court is prepared to conclude that many people are unable to lift the 50-pound and 100-pound boxes as required by the FFH test; Rosas's inability to do so does not render him substantially limited in lifting ability compared to the general population.

Whether Rosas is substantially limited in the major life activity of working is more complicated. The Appendix to the EEOC's post-ADAAA regulations makes clear that claiming disability under this theory is appropriate "in only very targeted situations. . . . In most instances, an individual with a disability will be able to establish coverage by showing substantial limitation of a major life activity other than working." 29 C.F.R. Pt. 1630, App. In the "rare case" that an individual must demonstrate substantial impairment in the area of working, a showing that the individual is substantially limited in performing "a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities" is required. 29 C.F.R. Pt. 1630, App. A limitation in performing the unique aspects of a single specific job is not enough. 29 C.F.R. Pt. 1630, App. The few cases analyzing this issue after the enactment of the ADAAA reflect that the "broad range of jobs" requirement survives the ADAAA. *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (10th Cir. 2011); *Azzam v. Baptist Healthcare Affiliates, Inc.*, ___ F. Supp. 2d ___, 2012 WL 28117, *6 (W.D. Ky. Jan. 5, 2012).

To the extent his failure on the FFH test renders Rosas unable to work for Thorne alone, that failure does not render him disabled in a "broad range" of work. An inability to work for a single employer does not generally demonstrate substantial impairment in a class of jobs. *See Allen*, 455 F. App'x at 835. In this case, however, Plaintiffs assert that the FFH test purportedly assessed general carpentry tasks not unique to Thorne jobs. (Compl. ¶ 15.) If Rosas were unable to perform lifting tasks that really are required for journeyman carpentry work–or even for drywall

13

installation work alone–he is limited in a broad range of jobs. As the Appendix explains, for a person "whose job requires heavy lifting," a 50-pound lifting restriction may qualify as a disability if it prevents that person "from performing not only his or her existing job but also other jobs that would similarly require heavy lifting." 29 C.F.R. Pt. 1630, App.

Assuming that Rosas's lifting restriction thus renders him disabled from the major life activity of working, the court concludes that Plaintiffs have adequately alleged that Rosas is qualified for the disputed position as well–that is, he is "an individual who, with or without reasonable accommodation, can perform the essential functions" of the job. 42 U.S.C. § 12111(8). Though Rosas did not pass the FFH test, Plaintiffs insist that his 29 years of experience and the fact that he worked for Thorne during periods between 1995 and 2008 demonstrate that he was in fact qualified for the Lurie Hospital job. (Compl. ¶¶ 45-48.) Indeed, according to Plaintiffs, Rosas was specifically requested by Defendant to work as a steward on the Lurie Hospital job before he failed the FFH test. (Pls.' Resp. at 8.) These allegations may well establish the "rare case" in which the claimant is disqualified from a range of jobs available to "most people having comparable training, skills, and abilities." 29 C.F.R. Pt. 1630, App.

Finally, even if Rosas is not disabled under the "actual" impairment prong of the ADA's definition, he qualifies for protection under the ADA if Thorne discriminated against him because it regarded him as disabled. 42 U.S.C. § 12102(1)(A)-(C). To meet the "regarded as" prong of the ADA, a qualified individual must suffer a prohibited action because of an actual or perceived impairment. 29 C.F.R. § 1630.2(l)(1)-(2). Plaintiffs do not believe that Rosas is substantially limited by his inability to lift 50-and 100-pound boxes to particular heights; they insist that doing so is not an actual requirement of the drywall job for which he applied at all. Instead, they suggest, Defendant has improperly construed this limitation as a disabling condition, thus "regarding [Rosas] as" disabled. The court concludes Plaintiffs' allegations are sufficient to state a claim under this theory.

## **CONCLUSION**

Thorne's Motion to Dismiss [14] is granted with respect to Count II, but otherwise denied. The FFH test does not qualify as a medical examination under the ADA, and Plaintiffs lack standing to challenge the medical examination administered by Thorne. Plaintiffs have, however, adequately pleaded that the FFH test is not consistent with business necessity and that Rosas is a qualified person with a disability within the meaning of the ADA. Defendant is therefore directed to answer Counts I and III within 21 days. A Rule 16 conference is set for October 30, 2012, at 9:00 a.m.

ENTER:

Dated: September 25, 2012

_____
REBECCA R. PALLMEYER
United States District Judge